UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------X

CONSTELLATION LEASING, LLC,

                     Plaintiff,

         -v-

OXFORD AVIATION, INC.,

                Defendant.

---------------------------------------X

**Civil Action No.
08 CV 6558**

**Defendant's
Memorandum of Law
In Support of Its
Motion to Transfer
Venue and for
Consolidation**

Defendant, Oxford Aviation Inc. (Oxford) respectfully submits this Memorandum of Law in support of its motion to transfer this action to the United States District Court, for the District of Maine, and to consolidate it with the prior pending action in Maine, entitled <u>Oxford Aviation, Inc. v. Constellation Brands, Inc.</u>, United States District Court, District of Maine, Civil Action No. 2:08-CV-419 (October 30, 2008).

## I.  INTRODUCTION

This action arises out of an agreement entered into between Oxford and the "Constellation Companies" in April and May, 2008. Pursuant to this agreement, Oxford performed certain work on the interior of a Dassault-Breguet Mystere Falcon 900B, FAA Reg. No. N117SF (hereinafter "the Aircraft").

The Defendant, Oxford is a Maine corporation with its principal place of business in Oxford County, Maine. The Plaintiff, Constellation Leasing, LLC states it is a New York company with its principal place of business in Monroe County, New York.[1] Constellation Leasing's Rule 7.1(a) Disclosure Statement to this Court states "its parent corporation is Constellation Brands, Inc. ("CBI") and that CBI, a publicly traded company, owns one-hundred percent (100%) of its stock". CBI states its principal place of business is located in New York.[2] Constellation Aviation, Inc. and Constellation Wines, U.S. Inc., "A Constellation Company", are, upon information and belief, also owned by Constellation Brands, Inc.

Following written notification to Oxford by CBI that it was terminating the agreement pursuant to which Oxford performed work on the Aircraft, Oxford filed an action against CBI in State Court in Maine. CBI then removed that action to the USDC, District of Maine. A few days after that removal, Constellation Leasing, LLC commenced this action in this Court.

It is respectfully submitted that this Court should transfer the within action to the US District Court, District of Maine, pursuant to 28 USC §1404(a) where it can be consolidated pursuant to FRLP 42(a) with the prior pending action between

---

[1] see Plaintiff's Complaint at ¶1
[2] see ¶2 of CBI's Answer in the Maine Action annexed to the Declaration of Francine P. Aronson filed herein as Exhibit 2.

Oxford and CBI.  As is more fully set forth below, CBI is the true party in interest in both actions, and the action pending in Maine was the first-filed action.  Moreover, this action involves essentially the same questions of law and fact as the prior pending action in Maine.

Defendant Oxford's attorney has conferred with Plaintiff, Constellation Leasing's attorney and confirmed that this motion is contested.  In addition, in the Maine action, Defendant CBI, filed, on March 17, 2009, an objection to Oxford's motion to amend its Complaint to add "Constellation Leasing, LLC" as a Defendant.  CBI also filed on March 17, 2009, a motion for judgment on the pleadings or alternatively, for a transfer of the Maine action to this Court or for a stay of the Maine action.  On March 30, 2009, a telephonic conference was held with Honorable John H. Rich III, United States Magistrate Judge, District of Maine, and the Maine attorneys for Oxford and CBI. As a result of that conference, Honorable John H. Rich III ORDERED[3] without objection, that:

1.  Any discovery conducted in the New York matter will be applicable in this matter.

2.  The defendant's counsel will promptly notify this court when the New York court has issued a scheduling order and provide a copy of the same, whereupon I will hold a further telephonic conference with counsel to discuss scheduling in this matter.

---

[3] see Order of Magistrate Judge John H. Rich III, dated March 30, 2009 and annexed as Exhibit 6 to the Declaration of Francine P. Aronson filed herein

3

3.    The plaintiff's deadlines for filing a reply
      brief with respect to its pending motion to
      amend its complaint (Docket No.9) and for
      filing an opposition to the defendant's
      pending motion for judgment on the pleadings
      or to transfer venue or for a stay (Docket No.
      15) are ***STAYED*** and will be addressed at the
      follow-up telephone conference with counsel
      referenced above.

4.    The establishment of further scheduling order
      deadlines in this matter is ***DEFERRED*** until the
      follow-up telephone conference with counsel
      referenced above.

## II    FACTUAL AND PROCEDURAL BACKGROUND

On or about April 14, 2008, Oxford sent an estimate to "Constellation Aviation" together with a cover letter addressed to Mickey Dalton, an aviation consultant to the Constellation Companies, regarding the work to be done by Oxford on the interior of the above-mentioned Aircraft.

Many of the statements and representations which formed the basis of the agreement for the work to be done on the Aircraft occurred between Charles "Mickey" Dalton, as Aviation Consultant for the Constellation Companies and Jim Horowitz, President of Oxford.

From June, 2008 to October, 2008 Oxford performed work on the interior of the Aircraft pursuant to the terms of the Agreement. Essentially all of this work was performed at its facility in Oxford, Maine.

On October 24, 2008, Thomas Mullin, Executive Vice President, General Counsel of CBI sent a letter to Oxford making a formal claim against Oxford for damage to the Aircraft and advising Oxford that it intended to have another vendor repair such damage and complete work to the Aircraft.[4]

On October 30, 2008, Oxford filed an action in Superior Court, Maine, against CBI and on December 5, 2008 CBI removed Oxford's State Court action to the United States District Court, District of Maine.[5]

On December 12, 2008 CBI filed and served its Answer to the Complaint of Oxford.[6] In its Answer in the Maine action, CBI claims that the owner of the Aircraft is its subsidiary company, Constellation Leasing, LLC, and that the agreement regarding the work to be done on the Aircraft was between Constellation Leasing, LLC, and Oxford. Oxford maintains its agreement to do work on the Aircraft was with CBI, the parent company.

On December 9, 2008, just four (4) days after CBI removed Oxford's action to the United States District Court, District of Maine, Constellation Leasing filed suit in this Court[7] against

---

[4] see Exhibit A annexed to the Motion to Amend Complaint dated 12/23/08 filed by Oxford, Plaintiff in the Maine action and annexed to the Declaration of Francine P. Aronson filed herein as Exhibit 3.
[5] Annexed to the Declaration of Francine P. Aronson filed herein as Exhibit 1 is the Notice of Removal filed by Defendant CBI in the Maine action with the Summons and Complaint filed by Oxford attached thereto as Exhibit A.
[6] see Exhibit 2 annexed to the Declaration of Francine P. Aronson filed herein.
[7] see Document 1 filed in this WDNY action.

Oxford which involves essentially the same questions of law and fact as the suit instituted in Maine by Oxford.

On December 23, 2008 Oxford filed a motion in its Maine action requesting leave to amend its Complaint and name Constellation Leasing, LLC as an additional Defendant.[8] In that motion Oxford notes that it was the Constellation Companies who created the confusion as to who is the correct party. Oxford maintains that it actually had dealings with, and/or correspondence and communication with, <u>four (4) different named Constellation Companies</u> regarding the agreement pursuant to which Oxford did work on the Aircraft.[9]

On March 17, 2009, CBI filed an objection to the motion by Oxford in Maine to amend its Complaint,[10] and also filed a motion in the Maine action for judgment on the pleadings, or alternatively, for a transfer of venue to the Western District of New York and for a stay.[11] In support of its motion and in its objection to Oxford's motion to amend its Complaint CBI

---

[8] see Exhibit 3 annexed to the Declaration of Francine P. Aronson filed herein.
[9] Oxford's initial estimate for the work to be done to the Aircraft was addressed to "Constellation Aviation". A meeting and communication regarding the acceptance of its estimate involved Robert Sands, CEO of "Constellation Brands, Inc. (CBI)" Also, although Oxford did send invoices for its work on the Aircraft to "Constellation Leasing", these invoices were in fact <u>paid</u> by "Constellation Wines, US Inc., A Constellation Company." See Affidavit of James Horowitz.
[10] see Exhibit 4 annexed to the Declaration of Francine P. Aronson filed herein.
[11] see Exhibit 5 annexed to the Declaration of Francine P. Aronson filed herein.

states that Constellation Leasing LLC owns the Aircraft which is the subject of the action and as owner is the "true party in interest". Therefore, claims CBI, the action filed by Constellation Leasing in the Western District of New York court should be considered a "first-filed" action.[12]

## III  **ARGUMENT**

**The "true party in interest" is CBI, the parent company of Constellation Leasing and since this action involves essentially the same questions of law and fact as the Maine action it should be transferred to and consolidated with the first-filed Maine action.**

The action commenced by Oxford against CBI in Maine was properly filed first and involves essentially the same questions of law and fact as the within action commenced by Constellation Leasing.  CBI, the parent company of the Plaintiff herein, Constellation Leasing, is in fact the "true party in interest" in both actions.  Moreover, it was CBI who removed Oxford's State Court action to the Maine District Court _prior_ to the filing of this action by its subsidiary Constellation Leasing, LLC, thereby invoking the jurisdiction of the Maine District Court in the first instance.

---

[12] see Exhibit 5 annexed to the Declaration of Francine P. Aronson filed herein at pages 1-2 and Footnote 1

Upon information and belief, CBI is also the parent company of two (2) other "Constellation Companies": "Constellation Aviation, Inc." and "Constellation Wines, U.S. Inc." These two companies were also involved in the agreement with Oxford regarding the Aircraft and made payment on account of services rendered by Oxford. Therefore, the "true party in interest" in this action, and the Maine action, should be deemed to be the parent company, Constellation Brands, Inc. (CBI). Although it is claimed that Constellation Leasing, the Plaintiff herein, actually owns the Aircraft in issue, it was "Constellation Wines, U.S. Inc.", that actually paid for the work done by Oxford on the Aircraft.[13]  Moreover, the agreement in issue was made between Oxford and Robert Sands, CEO of CBI and between Oxford and "Constellation Aviation".[14] Accordingly, <u>the true party in interest</u> is CBI, the parent company of Constellation Leasing, LLC, and presumably also the parent company of Constellation Aviation, Inc. and of "Constellation Wines, U.S., Inc., a Constellation Company".

Rule 42(a) of the Federal Rules of Civil Procedure provides that:

> If actions before the Court involve a common question of law or fact, the Court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid

---

[13] see Affidavit of James Horowitz at ¶15.
[14] see Affidavit of James Horowitz at ¶¶ 4,5 and 6.

unnecessary cost or delay.

The action in Maine and the within action involve the same agreement, the same claims regarding the breach of said agreement,[15] the same Aircraft which allegedly sustained damages; and it is submitted, involves the same true parties in interest. Constellation Leasing, the wholly owned subsidiary of CBI should not be allowed to maintain this separate action against Oxford in New York solely upon its claim that it is the "title owner" of the subject Aircraft. <u>CBI, the parent company of the three (3) other Constellation Companies which did business with Oxford in connection with the agreement and aircraft in issue is the true party in interest in both actions</u>.

Robert Sands, CEO of CBI, in fact took part in the negotiations of the terms of the agreement with Oxford and his approval of the agreement was given. The estimate which formed the basis of the agreement was addressed to "Constellation Aviation," a CBI company, and the invoices rendered by Oxford on account of the agreement were paid by "Constellation Wines, US Inc." another CBI company.[16] Thus, since the agreement and work done by Oxford in accordance with the terms of said agreement involved three (3) Constellation

---

[15] see ¶21 of Constellation Leasing's Complaint filed as Document 1 herein and ¶12 of CBI's Notice of Removal annexed as Exhibit 1 to the Declaration of Francine P. Aronson filed herein.
[16] see Affidavit of James Horowitz at ¶¶ 5 and 6.

Companies in addition to their parent corporation, CBI, the true party in interest should be deemed to be CBI.

The first-filed action is the action commenced by Oxford against CBI in State Court in Maine. That action was then removed to the Maine District Court by CBI _prior_ to Constellation Leasing the within action. It is generally preferred that the first filed action proceed when there are similar actions pending in two federal courts. BMJ Foods Puerto Rico, Inc. v. Metromedia Steakhouses Co. 562F Supp 2d, 229, 233(PPR 2008) citing Coady v. Ashcraft and Gerel, 223F3d, 11 (1st Cir. 2000).

The action in Maine and this action involve common questions of law and fact in that they involve the same agreement regarding work to be done to the Aircraft, the same alleged damages, and the same true parties in interest. Accordingly, since the Maine action was first-filed, this action should be consolidated with it and proceed in the Maine District Court.

CBI should not be allowed to waste judicial resources by first invoking the jurisdiction of the District Court of Maine through its Notice of Removal and claim of alleged damages in excess of the Court's jurisdictional minimum of $75,000.00 and then seeking to say and/or transfer that Maine action to this Court solely on the grounds that is subsidiary, Constellation

Leasing holds "title" to the Aircraft which sustained the alleged damages in issue.

In its Notice of Removal in the Maine Action CBI represented to the Maine District Court that the amount in controversy between Oxford and CBI satisfied the jurisdictional requirements of that Court because if the Court granted Oxford's request for a declaration that CBI is entitled to "no damages", Oxford would benefit in an amount far in excess of $75,000.00 because those damages include:

> a.  The diminished value of the aircraft associated with the pressure vessel damage, approximately $525,000;
>
> b.  The cost to repair the pressure vessel damage and the completion of unfinished interior installation items discovered through October 2008, $26,959.02 plus applicable sales tax; $26,959.02 plus applicable sales tax;
>
> c.  The costs to charter a replacement aircraft while repairs were being made to the Aircraft, $9,206.62;
>
> d.  Out-of-pocket costs associated with the pressure vessel damage repair, $2,317.19;
>
> e.  Internal crew time spent on the pressure vessel damage repair, $5,250.00; and
>
> f.  Additional damages including, for example, loss of use, repairs for faulty and poor work yet to be discovered, and other damages to be determined.[17]

---

[17] see ¶12 of CBI's Notice of Removal dated December 5, 2009 annexed to the Declaration of Francine P. Aronson as Exhibit 1.

It is respectfully submitted that CBI should not be allowed to engage in improper forum shopping and waste judicial resources by now seeking to have its subsidiary, Constellation Leasing, maintain an action in this Court for the same damages claimed in the Maine action.[18]

## In the interests of Justice, this Action should be Transferred to Maine pursuant to Title 28 USC §1404(a) which provides:

> "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

This action should be transferred to Maine. Since CBI, the parent company of Constellation Leasing, the Plaintiff herein invoked the jurisdiction of the Maine District Court in the first instance, it should not be allowed to engage in such a waste of judicial resources and forum shopping by having its subsidiary Constellation Leasing continue this action in New York.

Constellation Leasing claims it is the owner of the Aircraft in issue which sustained the alleged damage (¶5 of Constellation Leasing's Complaint). Constellation Leasing further alleges (¶10 of its Complaint) that Oxford submitted a bid to Constellation Leasing for the work to be done to the

---

[18] see ¶21 of Constellation Leasing's Complaint filed as Document 1 herein on December 9, 2008 just 4 days after CBI invoked the jurisdiction of the Maine District Court alleging the exact same damages.

Aircraft.   Oxford maintains this is not true, that Oxford submitted its estimate to "Constellation Aviation" and entered into the agreement with CBI. Constellation Leasing also claims in its Complaint herein that Oxford billed it $438,774.31 for the work under the agreement (¶15 of its Complaint). Constellation Leasing omits to inform this Court however that "Constellation Wines U.S. Inc., A Constellation Company" paid Oxford on account of the invoices addressed to Constellation Leasing for the work done on the subject aircraft.[19]

Pursuant to Title 28 USC §1391(a) venue is proper in an action wherein jurisdiction is founded only on diversity of citizenship only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated, . . .

Venue is clearly proper in Maine since the events or omissions giving rise to the claim occurred in Maine.   The Constellation Companies approached Oxford in Maine and chose to enter into an agreement and do business with Oxford in Maine. Essentially all of the work done by Oxford pursuant to the agreement was done in Maine.   Moreover, CBI the "true party in

---

[19] see Horowitz Affidavit herein.

interest" in both actions chose to submit itself to the jurisdiction of the District Court of Maine when it removed Oxford's state court action there just a few days before its subsidiary company, Constellation Leasing, LLC commenced the within action.

Pursuant to 28 US §1404(a), the district court has "broad discretion" in deciding whether to transfer venue. In re Cuyahoga Equip. Corp., 980F.2d 110,117 (2d Cir 1992). In exercising such discretion, a district court may consider the following factors:

> "(1) the plaintiff's choice of forum,
> 2) the convenience of witnesses, (3)
> the location of relevant documents and
> relative ease of access to sources of
> proof, (4) the convenience of parties,
> (5) the locus of operative facts, (6)
> the availability of process to compel
> the attendance of unwilling witnesses,
> and (7) the relative means of the parties."
> D.H. Blair & Co. v. Gottdiener, 462F3d95,
> 106-107 (2d Cir 2006) quoting Albert Fadem
> Trust v. Duke Energy Corp. 214F. Supp. 2d
> 341, 343 (SDNY 2002).

Weighing and balancing the above factors "is essentially an equitable task left to the Court's discretion" and "no single one of them is determinative" Citigroup Inc. v. City Holding Co. 97 F Supp 2d 549, 561 (SDNY 2000).

## Choice of Forum

Oxford is the Plaintiff in the Maine action and properly filed its suit first in Maine Superior Court, on October 30, 2008 shortly after its receipt of written notice from the General Counsel of CBI advising that Constellation no longer wanted its services, and was making a claim for damages against it.  CBI, rather than moving to dismiss that State Court action, chose instead to remove that State Court action to the United States District Court for the District of Maine.  CBI invoked the jurisdiction of the Maine District Court and chose that forum in the first instance.  It should not now be allowed to transfer it here claiming its subsidiary, Constellation Leasing, LLC is the "true party in interest" because it is the "title" owner of the Aircraft that allegedly sustained damages.  As set forth above, CBI is the "true party in interest"  because it owns the three (3) other Constellation Companies which all had significant dealings with Oxford regarding the agreement and Aircraft in issue.  Oxford addressed its initial proposed estimate to Constellation Aviation, addressed its invoices to Constellation Leasing and received payments from Constellation Wines, US Inc., "A Constellation Company" on account of those invoices.  Moreover, the negotiations and approval of the terms of the agreement directly involved Robert Sands, CEO of Constellation.  CBI should be deemed to have chosen Maine as its

forum since it chose to invoke the District Courts jurisdiction there prior to having its subsidiary commence suit here.

## Convenience of Witnesses and Parties

In determining whether a transfer should be granted, the convenience of the location of the District Court for witnesses "is probably considered the single most important factor". Liberty Mutual Fire Inc. v. Costco Wholesale Corp., Q6 Civ.5226 (PKL), 2007 US Dist. Lexis 63435 (Aug. 28, 2007) quoting Schnabel v. Ramsey Quantitative Sys. Inc. 332 F. Supp 2d505, 516 (SDNY 2004).

In order to determine whether a transfer should be granted the Court looks to the "center of gravity of the litigation" as judged primarily by the convenience of the witnesses. Indian Harbor Insurance Co. and The Trustees of the University of Pennsylvania v. Factory Mutual Insurance Co., 419F Supp 2d 395, 2005 US Dist Lexis 17253 @ 4 citing Cuzzupoli v. Metro North Commuter RR, 2003 US Dist. Lexis 10978, No. 02 Civ. 7947, 2003 WL 21496879 @ 3 (SDNY 6/30/03).

The convenience of non-party witnesses is generally given greater weight than that of a party witness, and the Court weighs the materiality, nature, quality and number of witnesses in each district in determining whether to transfer the action. Liberty Mutual @ 2007 US Dist. Lexis 63435 @ 3

Oxford advises that in this action, and in the prior pending action in Maine, some of the potential and material witnesses for Oxford Aviation who are all located in Maine, include, but are not limited to:

James Horowitz - President and Owner of Oxford who negotiated and entered into the agreement for work to be done on the Aircraft with Robert Sands, CEO of CBI, the parent company of the Plaintiff in this action, and who had dealings with other representatives from the Constellation Companies, and who was ultimately responsible for the performance of the agreement.

Louise Gartland - interior shop manager of Oxford who performed many services and who actually witnessed other damage done to the Aircraft by the third parties which is not in issue in this action but which clearly relates to any diminution in value claim by Constellation Leasing and/or CBI.

Aaron Wardwell - A&P mechanic/inspector of Oxford who installed the table, which installation Constellation Leasing and CBI claims diminished the value of the Aircraft.

Joel Lusky - former director of maintenance who was present during much of the work and had communications regarding work done.

In addition, other employees of Oxford including, Steve Garcia - interior department installer; Nicolette McGinley - cabinet maker; Scott Clark - mechanic; Jesse Lemiex - interior

cabinet; and Dave Womack - A&P mechanic/IA mechanic all have knowledge of the work done on the Aircraft, and/or actually performed work on the Aircraft and/or had communications with individuals from the Constellation Companies. There were approximately 31 employees of Oxford who worked on the interior of the Aircraft (see ¶12 of Horowitz Affidavit). To require these Oxford employees and others in Maine who may have pertinent testimony to offer, to travel to Rochester, New York, would place an undue hardship and expense upon Oxford.

Oxford is a relatively small company located in Oxford, Maine, having about 60 employees. Individuals from CBI, and its wholly owned subsidiary, Constellation Leasing, LLC, and from Constellation Aviation, Inc., (which had some dealings in this matter), and from "Constellation Wines, U.S., A Constellation Company" (the entity which actually made payments for the work done on the Aircraft), have far superior means to travel to Maine than Oxford has to travel to New York. The Aircraft in issue can easily be flown to Fryeburg, Maine which is near Oxford, Maine and can transport Constellation's witnesses and records. Moreover, it was the Constellation Companies which chose to do business in Maine with Oxford.

Potential witnesses from the Constellation Companies include:

Paul Middlebrook - Aviation Manager and Vice President of Constellation Leasing, LLC and prior to this employee position, Constellation Brands, Inc. and Constellation Leasing, LLC were his "clients for approximately 18 years",

Robert Sands - CEO of Constellation Brands, Inc. (CBI),

Charles F. ("Mickey") Dalton - Aviation Consultant to Constellation Brands, Inc. and Constellation Leasing, LLC.,

Kenneth Bricker - Director of Maintenance of Constellation Aviation, Inc., Director of Maintenance of Constellation Leasing, LLC, Aviation Operations. Also, Mr. Bricker apparently has some position with CBI since his e-mail address on his business card and letter is c.brands.com.,

Thomas J. Mullin - Executive Vice President and General Counsel of CBI., and

Dave Thiesmeyer - a mechanic who was on site in New York when Oxford removed and reinstalled the interior. His title is unknown but his e-mail address is c.brands.com.

In addition, Adam Alpert, who previously hired Oxford to do work on his plane and who referred Charles "Mickey" Dalton of Constellation to Oxford, and Gisela Alpert (Adam's wife), who was hired as a design consultant for the interior work on the Aircraft, are key witnesses and they reside in Vermont. Adam Alpert and Gisela Alpert both made several trips to Oxford, and Gisela actually worked at Oxford's facility in Maine as a design consultant with respect to the Aircraft.

The witnesses and parties from New York may travel to Maine with greater ease and at less cost than Oxford's parties and witnesses travelling to New York, since the Constellation Companies have possession and ownership of aircraft and there is

a landing strip at Fryeburg, Maine, near Oxford which can accommodate the aircraft owned by Constellation.

The Constellation Companies initiated the contact with Oxford in Maine to do the work on the Aircraft and most of the work done by Oxford was done in Maine. At the outset of the agreement it was agreed that since the landing strip at Oxford, Maine could not accommodate the Aircraft only the removal and reinstallation of the interior of the Aircraft would be done in Rochester, New York and that the Constellation Companies' employees would supervise and sign off on Oxford's work done in New York.

## LOCATION OF DOCUMENTS AND OPERATIVE FACTS

The location of the documents and operative facts are in Oxford, Maine. Constellation Brands, Inc. and its various subsidiaries and/or other related entities approached Oxford Aviation, Inc. in Maine regarding work it wanted done to its Aircraft. The agreement between Oxford and Constellation must be deemed to have been procured and negotiated in Maine and essentially all work pursuant to the agreement was done in Maine. Only the removal of the interior of the Aircraft and the reinstallation of the interior of the Aircraft was to be done in New York.

The documents to be produced in this action to prove that Oxford did not breach its agreement are located in Maine. As

stated by James Horowitz (see ¶12 of Horowitz affidavit) there were approximately 31 employees of Oxford who worked on the interior of the Aircraft and who are potential witnesses.

## JUDICIAL ECONOMY

The transfer of venue to Maine would further judicial economy and administrative efficiency since the Maine action has been pending since October 30, 2008. The Complaint and Answer have been filed in the District of Maine and it was CBI, the parent company of the Plaintiff, Constellation Leasing, the Plaintiff herein, who invoked the jurisdiction of the U.S.D.C. in Maine by removing Oxford's action to it. In addition, there are two motions now pending before the U.S.D.C., Maine. One by Oxford, to amend it Complaint to include Constellation Leasing, the Plaintiff herein, and one by CBI, to dismiss or transfer the action.

## IV    CONCLUSION

For the foregoing reasons, Oxford respectfully requests that this Court grant its motion to transfer this action to the District of Maine where the suit first-filed by Oxford is pending against the true-party in interest, Constellation Brands, Inc. (CBI).

> Respectfully submitted,
>
> OXFORD AVIATION, INC.
>
> By and through its counsel,

21

                              LAW OFFICES OF ROBERT W. ARONSON

Dated: April 17, 2009        By:/s/ Francine P.Aronson
                             Francine P. Aronson, Esq. Bar #FA0793
                             Law Offices of Robert W. Aronson
                             129 Clove Branch Road
                             Hopewell Junction, NY 12533
                             (845) 226-9996
                             aronsonlaw@optonline.net