```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------X
CONSTELLATION LEASING, LLC,                    08 CV 6558 CJS

                    Plaintiff,                 Affidavit in
                                               Support of Motion
          -v-                                  for Transfer of
                                               Venue to U.S.D.C.
OXFORD AVIATION, INC.,                         District of Maine
                                               and for Consol-
                    Defendant.                 idation
------------------------------------X
```

## AFFIDAVIT OF JAMES HOROWITZ

I, James Horowitz, hereby depose and say as follows:

1. I am the President and Owner of Oxford Aviation, Inc. I am over the age of 18 and of sound mind and body.

2. Oxford Aviation, Inc. ("Oxford") is a Maine Corporation with a principal place of business located in Oxford County, Maine.

3. In or about April, 2008, Charles F. "Mickey" Dalton spoke to me about work to be done on the interior of a Dassault Breguet Mystere Falcon 900B, FAA Reg. No. 1127SF (the Aircraft). Mr. Dalton had been referred to me by Adam Alpert, a customer of mine, who is the cousin of Robert Sands, CEO of Constellation Brands, Inc.

4. On April 14, 2008, I forwarded a letter to Mr. Dalton with an Estimate addressed to "Constellation Aviation" for the work to be done to the Aircraft. A signature line for Constellation Brands was provided for on the bottom of the Estimate.

5. On or about May 22, 2008, certain employees of Oxford and I met with Robert Sands, CEO of Constellation Brands, Inc., to give a presentation of various designs for the work to be done to the interior of the Aircraft. Gisela Alpert, wife of Adam Alpert, was hired as a design consultant regarding the interior work to be done by Oxford, and she was present at this meeting and arranged the presentation layout.

6. At all times, Robert Sands, CEO of Constellation Brands, Inc., appeared to be the one entering into the agreement with Oxford for the work to be done on the interior of the Aircraft. During May, 2008, there were several e-mails from Gisela Alpert informing Oxford that Robert Sands had given approval for certain materials and designs for the interior work on the Aircraft.

7. The work done by Oxford to the interior of the Aircraft was done in its facility in Oxford, Maine in July, August and September, 2008. Indeed, this was required by Oxford's FAA Regulations (FAR) Part 141 license which provided that work done by Oxford be done "On Site", that is, at its

2

facility in Oxford, Maine. Because the landing strip at Oxford County Airport could not accommodate the Aircraft, it was agreed at the outset, that the interior of the Aircraft would be removed by Oxford's personnel in Rochester and delivered by truck to Oxford's facility in Maine. The removal of the interior of the Aircraft and delivery of the same to Oxford in Maine was completed on or about June 28, 2008.

8. It had further been agreed, prior to Oxford's commencing work, between Mr. Dalton and others at Constellation, that Constellation's FAA licensed personnel would have to supervise, inspect, sign and submit all "return to service" documents when re-installation work occurred. Re-installation of the interior occurred in late September, 2008, in Rochester, under the supervision of Kenneth Bricker. Mr. Bricker holds the title of "Director of Maintenance" of "Constellation Aviation, Inc." and of "Constellation Leasing, LLC". Mr. Bricker's e-mail address is www.c.brands.com.

9. At the time of the re-installation of the interior of the Aircraft, in late September, 2008, Oxford's A&P mechanic, Aaron Wardwell was asked to install a rear table. Mr. Wardwell however, did not have certain rivets of the size specified to anchor the plate supporting the table. Mr. Wardwell asked Mr. Bricker, of Constellation, if certain substitute screws could be used. Mr. Bricker approved the use of those substitute screws

and also confirmed that the location where the holes were to be drilled would not cause any problems.

10. Some damage did occur as a result of the installation of the rear table, but this damage was minimal and consisted of four (4) pin holes that could be relatively easily repaired. An authorized Dassault repair expert provided an estimate of less than $5,000.00 to repair these four "pin holes" which penetrated the skin of the pressure vessel in the wheel well.

11. Even though Mr. Bricker, of the Constellation COmpanies, had approved Mr. Wardwell's installation of the table, Oxford agreed to repair the damage, and arrangements were made for the Aircraft to be flown to Fryeburg, Maine which is near Oxford in late October, 2008.

12. I employ approximately 60 people at my company, Oxford Aviation, Inc., in our facility in Maine. Approximately 31 of my employees performed work on the interior of the Aircraft in issue, in Oxford, Maine. In addition, several members of my office staff and accounting department performed services and had communications regarding Oxford's work on the interior of the Aircraft.

13. Mickey Dalton, on behalf of the Constellation Companies, came to my facility in Oxford, Maine 4 or 5 times after the acceptance of Oxford's proposal and estimate to check on the progress of the work to the interior of the Aircraft.

Adam Alpert and Gisela Alpert also came to my facility in Oxford, Maine to check on the progress and report to Mr. Sands, CEO of Constellation Brands, Inc. Gisela Alpert also worked at my Maine facility on several occasions.

14. After the agreement was entered into between Oxford and the Constellation Companies, it was requested that Oxford send invoices for its work on the Aircraft to "Constellation Leasing, LLC". Constellation Leasing, LLC did not however make payment on account of these invoices.

15. A company named "Constellation Wines, U.S. Inc., A Constellation Company," made payments to Oxford for the work Oxford did on the interior of the subject Aircraft as follows:

| Date | Amount |
|---|---|
| 05/14/08 | $ 25,000.00 |
| 06/04/08 | 25,000.00 |
| 08/25/08 | 50,000.00 |
| 07/23/08 | 75,000.00 |
| 08/06/08 | 25,000.00 |
| 08/13/08 | 25,000.00 |
| 08/20/08 | 25,000.00 |
| 10/01/08 | 113,474.31 |

16. On October 24, 2008 I received a letter from Thomas Mullin, Executive Vice-President and General Counsel of Constellation Brands, Inc., advising that they "intend to have another supplier assess and repair the damage and complete the remodeling work". I then notified my attorneys, Pierce, Atwood, and they filed suit on behalf of Oxford against Constellation Brands, Inc. in Maine Superior Court on October 30, 2008.

Constellation Brands, Inc. then removed that action to the United States District Court, District of Maine, where it is now pending.

17. In summary, the agreement in issue was entered into between Oxford and "Constellation Brands, Inc." through its CEO, Robert Sands, and with "Constellation Aviation". Essentially, all of the work done pursuant to the agreement was done in Maine at Oxford's facility. A substantial number of non-party witnesses are in Oxford, Maine. Oxford's only contact with "Constellation Leasing, LLC" was to send it invoices for work done on the interior of the Aircraft. Constellation Leasing, LLC did not make payments on account of these invoices. Rather, "Constellation Wines, U.S. Inc., A Constellation Company" made the payments on account of the invoices sent to "Constellation Leasing, LLC".

18. Based upon the above facts and circumstances it is respectfully requested that this District Court, Western District of New York, action instituted by "Constellation Leasing, LLC" be transferred to and consolidated with the action now pending in Maine District Court, entitled <u>Oxford Aviation Inc. v. Constellation Brands Inc.</u> Civil Action No. 2:08-CV-419.

Dated:    April    , 2009

_____
James Horowitz

THE STATE OF MAINE
COUNTY OF OXFORD

    Then personally appeared on this 6th day of April, 2009, the above named James Horowitz and acknowledged the foregoing statement to be true to the best of his personal knowledge and belief, before me.

_____
Notary Public

Debra C. Martin
My Commission Expires
August 18, 2011



7

04/06/2009 12:23    8452269992    ROBERT ARONSON ESQ    PAGE 08/08