UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CONSTELLATION LEASING, LLC

                                            Plaintiff,

                           - v -                                           08 CV 06558-CJS-JWF

OXFORD AVIATION, INC,

                                            Defendant.

**CONSTELLATION LEASING, LLC'S MEMORANDUM IN
OPPOSITION TO OXFORD AVIATION, INC.'S MOTION
TO TRANSFER ACTION AND FOR CONSOLIDATION**

      Plaintiff Constellation Leasing, LLC ("Leasing") respectfully submits this Memorandum

in Opposition to Defendant Oxford Aviation, Inc.'s ("Oxford") Motion to Transfer Venue and

For Consolidation.

## I.     <u>INTRODUCTION</u>

      This lawsuit arises out of Oxford's failure to perform, in a skillful and workmanlike

manner, certain work on a Dassault-Breguet Mystere Falcon 900B, fixed wing multi-engine

airplane, S/N 055, FAA No. N117SF ("the Aircraft") owned by Plaintiff Leasing.  After Oxford

damaged Leasing's Aircraft, and, rather than engage in settlement discussions to resolve this

action informally, Oxford raced to the courthouse in the state of Maine to file an improper

anticipatory declaratory judgment lawsuit against the wrong party, Constellation Brands, Inc.

("CBI"), in an effort to clothe itself a plaintiff in an apparent attempt to gain a home-court

advantage.  In the anticipatory Maine action, Oxford seeks a declaration that CBI is owed no

damages.[1]  After CBI removed the Maine state court action to federal court, and after Leasing

---

[1] In its Complaint filed on October 30, 2008 in Maine state Court, Oxford seeks a declaration,
*inter alia*, that:

<small>(Footnote continued on next page)</small>

filed this action, on December 23, 2008, Oxford filed a Motion to Amend Complaint in the Maine federal court in an attempt to cure its defective lawsuit by seeking leave to amend its Complaint to add Leasing as a defendant.  Thus, Oxford recognized at that time that it had sued the wrong party.

Oxford now seeks to transfer this action involving the true party in interest, Leasing, from the Western District of New York to the District of Maine, so that it may be consolidated with Oxford's improperly filed anticipatory lawsuit that is pending against Leasing's parent: CBI. Because the Western District of New York is the locus of operative facts underlying this action, because the balance of conveniences and considerations of judicial economy weigh in favor of maintaining this action in this District, and because public policy favoring settlement is best served by allowing this action to proceed here, Oxford's motion should be denied.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In the spring of 2008, Oxford and Leasing entered into an agreement pursuant to which Oxford agreed to refurbish the interior of the Aircraft owned by Leasing.  *See* Complaint at ¶¶ 11-14; *see also* Affidavit of Paul E. Middlebrook ("Middlebrook Aff.") at ¶¶ 5-7 and Exhs. A - B thereto.  Under the agreement between Leasing and Oxford,[2] Oxford agreed to substantially

---

*(Footnote continued from previous page)*

- "[CBI] has a duty to mitigate any damages by allowing Oxford to complete any necessary repairs at its own cost";

- "Oxford has the right under the contract to effect any necessary repairs to the plane at its own cost and, should [CBI] refuse to allow Oxford that opportunity, [CBI] is entitled to no damages."

*See* Oxford's Complaint filed in Maine state court at p. 2, Exh. A to Affidavit of Richard A. McGuirk, Esq. ("McGuirk Aff.").

[2]  Oxford argues throughout its Memorandum of Law in Support of Its Motion to Transfer and for Consolidation ("Oxford's Memo. Of Law") that Oxford entered into an agreement with "Constellation Companies" and not just with Leasing.  *See, e.g.*, Oxford's Memo. of Law at pp. 1, 6.  Putting Oxford's convenient failure to respect corporate formalities aside, a review of the

*(Footnote continued on next page)*

refurbish the interior of the Aircraft including the Aircraft's cockpit and the cabin. *See* Middlebrook Aff. at ¶ 6, Exh. B. The work Oxford was to perform under the agreement included, *inter alia*, stripping and reupholstering certain of the Aircraft's seats, removing and replacing the carpet in the cabin and cockpit areas, stripping and reupholstering the Aircraft's cabin window panels, refinishing cabinets in the cabin and lavatory area, installing new countertops, and placing a new table in the cabin area. *See Id*; *see also* Complaint at ¶ 14.

While in New York, and during the course of performing the interior work, in an attempt to install a table in the starboard rear cabin, Oxford damaged the pressure vessel of the Aircraft, causing punctures of the pressure vessel into the right landing gear wheel well ("pressure vessel damage"), requiring considerable repair work and resulting in a significant diminution in the value of the Aircraft. Middlebrook Aff. at ¶ 10. Oxford also failed to complete all its work, requiring Leasing to incur expenses to finish the job. *Id.* at ¶ 12. Leasing, having lost confidence in Oxford, elected to have the pressure vessel damage, that is the subject of this lawsuit, repaired by another vendor, together with additional work Oxford did not complete of which Leasing was aware as of October 2008. *Id.* at ¶ 13.

In an effort to settle the pressure vessel damage Oxford caused to the Aircraft, and short of bringing litigation, on October 24, 2008, Thomas J. Mullin, Leasing's Vice President and Assistant Secretary, and CBI's General Counsel, wrote to Oxford stating:

> We have notified our insurance carrier, AIG Aviation, Inc., of the [pressure vessel damage] and the circumstances under which it was caused. We suggest that you also notify your insurance carrier of the

---

*(Footnote continued from previous page)*
evidence belies this assertion. Indeed, Oxford wrote its initial estimate letter to Constellation Aviation, Inc., Leasing's predecessor-in-interest. *See* Affidavit of James Horowitz ("Horowitz Aff.") at ¶4; *see also* Middlebrook. Aff. at ¶ 6; Exh. B. Further, Oxford sent all of its invoices to Leasing and not to any other "Constellation compan[y]." Middlebrook Aff. at ¶8.

incident.  We would appreciate you providing us the name and contact information for your insurer to speed resolution of this issue.

Exh. B to McGuirk Aff.

Rather than respond, less than one week later, on October 30, 2008, Oxford filed an anticipatory lawsuit against CBI in the State of Maine, Oxford County Superior Court ("the Maine Action").  *See Id.* at Exh. A.  Oxford's Maine Action, however, suffers from at least one critical defect.  Namely, it seeks declaratory relief against the wrong party: CBI.  Specifically, as noted above, Leasing, not CBI, is the owner of the Aircraft that is the subject of the Maine Action.  Middlebrook Aff., at ¶4, Exh. A.[3]

On December 5, 2008, CBI removed the Maine state case to the District of Maine.  In its Notice of Removal, CBI satisfied the federal court's jurisdictional threshold by establishing that the "the object of the litigation," and thus, the amount in controversy, is the amount of damages Oxford seeks to avoid, arising from the pressure vessel damage.  In other words, CBI asserted that, if the Maine Court were to find in Oxford's favor, Oxford would benefit in an amount far in excess of the $75,000 jurisdictional limit.  *See* Notice of Removal attached as Exh. 1 to the Affidavit of Francine Padgett Aronson ("Aronson Aff.").[4]

On December 9, 2008, Leasing, the true party in interest, filed this action against Oxford in the United States District Court for the Western District of New York (the "New York Action"), the judicial district encompassing the counties in which Leasing and its parent CBI reside, and the judicial district in which Oxford performed critical work under the agreement and where it damaged the Aircraft.  *See* Complaint.  In this action, Leasing seeks to recover from

---

[3]  The Maine Action is stayed pending this Court's resolution of Oxford's Motion to Transfer Action and for Consolidation.  McGuirk Aff. at Exh. C.

[4]  CBI did not in its removal papers, as Oxford would have the Court believe, contend or assert that *it*, rather than Leasing, had suffered the damages underlying this lawsuit.

Oxford damages including those arising from the pressure vessel damage Oxford caused to the Aircraft under breach of contract, breach of warranty and negligence theories. *Id.* at pp. 4-5.

## III.    ARGUMENT

### A.    Leasing, As The Owner of the Aircraft and the Party Who Suffered The Pressure Vessel Damage, Is The True Party In Interest.

As an initial matter, this Court must ignore Oxford's unsupported argument that CBI is the "true party in interest" in this action because, for example, "it owns the (3) other Constellation Companies which all had significant dealings with Oxford regarding the agreement and the Aircraft in issue." Oxford's Memo. of Law at p. 15.[5]

First and most importantly, Oxford has not alleged, nor has it established, any facts that would allow this Court to ignore the basic fundamental of corporate law which requires respect of corporate formalities such as the delineations between CBI and Leasing. *The Limited, Inc. v. McCrory Corp.,* 645 F. Supp. 1038, 1044 (S.D.N.Y. 1986) ("Basic principles of corporate law presume that . . . one corporate entity . . . is not automatically or readily responsible for the acts of another entity"); *Em Ltd. v. Republic of Argentina*, 473 F.3d 463, 479 (2d Cir. 2007) (noting that a presumption of separateness should be afforded to entities with separate juridical status).

Moreover, Oxford has not disputed, and cannot dispute, that Leasing owns the Aircraft that suffered the pressure vessel damage, and thus, is the party who suffered the damages it seeks to recover in this action rendering it the true party in interest. *See* Middlebrook Aff. at Exh. A. Further, one of the "Constellation entities" Oxford contends CBI owns, Constellation Aviation, Inc., is no longer in existence and is Leasing's predecessor-in-interest. In fact, Constellation Aviation, Inc. merged with and into Constellation Leasing in 2006. *See Id.* at Exh. C. In

---

[5] Specifically, Oxford contends that it "addressed its initial proposed estimate to Constellation Aviation, addressed its invoices to Constellation Leasing and received payments from Constellation Wines, US Inc., 'A Constellation Company'." *Id.*

addition, as noted above, Oxford, recognizing that Leasing was the true party in interest, sent all of its invoices to Leasing and not to any other "Constellation compan[y]." *Id.* at ¶8, Exh. D. Oxford's attempt to claim that CBI is the "true party in interest" by referencing certain meetings and communications it claims it had with Mr. Robert Sands, CBI's CEO, regarding work under the agreement should be rejected. Mr. Sands is also one of two directors of Leasing, and is a Vice President and Secretary of Leasing. *Id.* at ¶ 14. Finally and tellingly, once it realized it had named the wrong party in the Maine Action, Oxford filed a Motion to Amend its Complaint to add Leasing.

**B.    The Western District Of New York Is The Proper Venue For This Dispute Concerning Damage To The Aircraft, Which is Located In This District And Which Oxford Damaged In This District.**

Oxford makes this motion pursuant to 28 U.S.C. § 1404(a), seeking to transfer this action from the Western District of New York – where Leasing maintains its place of business, where the damage underlying this lawsuit occurred, and where the Aircraft is located – to the District of Maine where Oxford filed an anticipatory lawsuit against the incorrect party, CBI. Oxford's attempt should be rejected.

Title 28 U.S.C. § 1404(a) provides that:

> [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Section 1404 gives this Court discretion to transfer cases according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). As discussed below, considerations of convenience and fairness require that this action remain in the Western District of New York.

As the moving party, Oxford bears the burden of establishing that the Western District of New York is an inappropriate forum for this dispute. *Indian Harbor Ins. Co. v. Factory Mut.*

*Ins. Co.*, 419 F. Supp. 2d 395, 401 (S.D.N.Y. 2005) (citing *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) *overruled on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990)); *see also APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 667 (S.D.N.Y. 1999) ("The moving party, however, bears the *burden of making out a strong case for transfer*.") (internal citation and quotation omitted) (emphasis added).  To overcome this burden, Oxford must make a *clear and convincing* showing that transfer under Section 1404(a) is proper.  *Duke, Holzman, Photiadis & Gresens LLP v. Cosentino*, 08-cv-0437, 2009 U.S. Dist. LEXIS 1001, *13 (W.D.N.Y. Jan. 8, 2009); *Lencco Racing Co., Inc. v. Artco, Inc.*, 953 F. Supp. 69, 71 (W.D.N.Y. 1997) (noting that the moving party must "make a *clear-cut* showing that [transfer] is warranted.") (emphasis added).  "[T]he presumption against transferring venue is a strong one, and 'the rule in this Circuit is that plaintiff's choice of forum will not be disturbed unless the movant shows that the balance of convenience and justice weighs *heavily* in favor of transfer.'"  *Bronx Legal Servs. v. Legal Servs. Corp.*, 00 Civ. 3423 (GBD)*, 2000 U.S. Dist. LEXIS 10952 at *8-9 (S.D.N.Y. Aug. 4, 2000) (quoting *Manuf. Hanover Trust Co. v. Palmer Corp.,* 798 F. Supp. 161, 164 (S.D.N.Y. 1992)) (emphasis added); *see also A&A Jewellers Ltd. v. Commemorative Brands, Inc.*, 03-cv-06515, 2004 U.S. Dist. LEXIS 7361, *4 (W.D.N.Y. Mar. 30, 2004) (finding that defendant had not made a clear and convincing showing that the case should be transferred).

        To meet its heavy burden, Oxford must first establish that this action "might have been brought" in the District of Maine.  28 U.S.C. § 1404(a), *see also Dahl v. HEM Pharmaceuticals Corp.*, 867 F. Supp. 194, 195 (S.D.N.Y. 1994).  Once the Court determines that this action could have been initiated in the District of Maine, then it must consider several factors to determine whether transfer is appropriate and is in the interests of justice.  These factors include:

> (1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with governing law; and (8) trial efficiency and the interests of justice.

*APA Excelsior III v. Premiere Tech., Inc.*, 49 F. Supp. 2d 664, 667 (S.D.N.Y. 1994); *see also Boyle v. Anheuser Busch, Inc.,* 04-cv-0977E, 2006 U.S. Dist. LEXIS 51201, *3 (W.D.N.Y. July 26, 2006). "There is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). "Instead, weighing the balance 'is essentially an equitable task' left to the Court's discretion." *Citigroup*, 97 F. Supp. 2d at 561 (citing *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989)); *see also Duke, Holzman*, 2009 U.S. Dist. LEXIS 1001 at * 13 (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)) ("Motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness and on a case-by-case basis.").

## 1.     **The Locus of Operative Facts Underlying This Lawsuit Is The Western District of New York.**

Because the locus of operative facts is the Western District of New York, this Court should deny Oxford's motion. "The location of the operative facts is traditionally an important factor to be considered in deciding where a case should be tried." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994). "The locus of operative facts is significant because it can provide an overview of many of the other factors a court considers." *Liberty Mutual Fire Ins. v. Costco Wholesale Corp.*, 06 Civ. 5226 (PKL), 2007 U.S. Dist. LEXIS 63435, *13 (S.D.N.Y. Aug. 28, 2007). To determine where the locus of operative facts lies, courts look to "the site of events from which the claim arises." *800-Flowers*, 860 F. Supp. at 134.

The locus of operative facts in this case is undeniably in this District. Leasing is an entity formed in New York with a principal place of business in Ontario County, New York, which lies within this District. All of Leasing's employees, including those who witnessed and/or were directly involved with repairing the pressure vessel damage, are resident within the Western District of New York. The Aircraft, and the subject of this litigation, is located in Monroe County, New York, which also lies within the Western District of New York. 28 U.S.C. § 1391(a)(2) (noting venue is proper "in a judicial district in which a . . . a substantial part of the property that is the subject of the action is situated"). As Oxford acknowledges, much of the work Oxford performed on the Aircraft was done in New York. Horowitz Aff. at ¶¶ 8-9. Finally, and most significantly, the pressure vessel damage, the "event or omission giving rise to the claim," occurred in New York. 28 U.S.C. § 1391(a)(2) (venue is additionally proper "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). For this reason alone, this Court should deny Oxford's motion. *See, e.g., O'Brien & Gere, Inc. v. Barton Brands, Ltd.*, 497 F. Supp. 2d 507, 510 (W.D.N.Y. 2007) (finding proper venue was in Kentucky where the baghouse system was installed on a boiler causing a fire there); *see also Duke, Holzman*, 2009 U.S. Dist. LEXIS 1001 at * 15 (locus of operative facts in Erie County, New York, weighed against transfer to Florida).

## 2.    The Convenience of the Parties Weighs In Favor of This Lawsuit Remaining in the Western District of New York.

Oxford suggests that the Western District of New York is an inappropriate forum because it would be more convenient for Oxford to litigate in Maine where its own place of business is located and where its employees are located. It is equally, if not more inconvenient for Leasing to defend an anticipatory lawsuit in Maine, pending against the incorrect party, when its principal place of business is located in the Western District of New York, its employees and key

witnesses to the pressure vessel damage are located in New York and the Aircraft is located in

New York.  Because Oxford has not made a sufficient showing that its burden of defending a

lawsuit in the Western District of New York is any greater than Leasing's burden of defending a

lawsuit in the District of Maine, this Court should not afford this factor much, if any, weight.

*Transatlantic Reinsurance Co. v. Cont'l Ins. Co.*, No. 03 Civ. 3227 (CBM), 2003 U.S. Dist.

LEXIS 20933, *13 (S.D.N.Y. Nov. 20, 2003) ("The parties' convenience becomes a neutral

factor in the transfer analysis if transferring venue would merely shift the inconvenience to the

other party.").[6]

### 3.    The Convenience of Witnesses Weighs In Favor of This Lawsuit Remaining in the Western District of New York.

Oxford contends that the District of Maine is a more convenient forum than the Western

District of New York because "some of the potential and material witnesses for Oxford" are

located in Maine.  *See* Oxford's Memo of Law at p. 17.  Oxford then goes on to identify certain

of its employees it contends would testify at trial.  "This consideration is generally relevant[,

however,] only with respect to *third-party witnesses*, since employees of the parties will as a

practical matter be available in any venue by virtue of the employment relationship."  *Citigroup*,

97 F. Supp. 2d at 561 (emphasis added); s*ee also, A&A Jewellers*, 2004 U.S. Dist. LEXIS 7361,

*8 n. 15 (noting that listed witnesses are defendant's own employees who it could make

---

[6]    This Court should reject Oxford's suggestion that it would be more convenient for
Leasing to litigate in Maine because "the Aircraft can easily be flown to Fryeburg, Maine which
is near Oxford, Maine and can transport Constellation's witnesses and records."  *See* Oxford's
Memo. of Law at p. 16.  Indeed, as Oxford acknowledges in its papers, it is very difficult, if not
impossible, for the Aircraft to land at the Fryeburg, Maine landing strip.  *Id.* at 20.  Further, due
to the costs of flying a private plane such as the Aircraft alone, Leasing would not likely utilize
the Aircraft to transport documents and witnesses to Maine for trial and would be required to fly
commercially as would Oxford personnel if this case remains in the Western District of New
York.  Finally, if the Maine action were to proceed it would be in Portland which is hours away
from Fryeburg.

available for trial).  Moreover, while Oxford asserts it has 31 employees who "worked on the interior of the Aircraft," *see* Oxford's Memo of Law at p. 18, only approximately 5 of those employees were on site in New York on or around the time Oxford caused the pressure vessel damage and thus would likely have testimony relevant to this case.  Middlebrook Aff. at ¶ 9. Furthermore, Oxford has not identified *any* third party witnesses it intends to call in this action. On the other hand, Leasing intends to call Mickey Dalton as a third-party witness in this matter as well as certain employees of Standard Aero who performed the pressure vessel damage repair work.  Mr. Dalton is located in the Western District of New York.  Standard Aero's employees are likely located in or around Springfield, Illinois where the company is located.[7]

### 4.    Location of Relevant Documents and Relative Ease of Access to Sources of Proof.

Oxford next argues that because its own documents relevant to this action are located in Oxford, Maine, Leasing should be required to defend Oxford's anticipatory suit in Maine. "[T]he location of documents is entitled to little weight unless defendant makes a <u>detailed showing</u> of the burden it would incur absent transfer."  *Indian Harbor*, 419 F. Supp. 2d at 402 n. 2 (emphasis added); *see also Royal Ins. Co. of Am. v. Tower Records, Inc.*, No. 02 Civ. 2612, 2002 U.S. Dist. LEXIS 20109, *17-18 (S.D.N.Y. Oct. 22, 2002) ("The location of records is not a compelling consideration when records are easily portable.") (internal citation and quotation omitted) (emphasis added).  Oxford has failed to make a detailed showing that the relevant

---

[7]  Oxford's reference to Adam and Gisela Alpert as "key witnesses" is a red-herring.  Oxford notes these individuals either referred Constellation to Oxford or performed "design consult[ing]" work, but does not make any particularized showing regarding these witnesses' proposed testimony relating to the damage to the Aircraft, as is required to meet its burden.  *See Beatie & Osburn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2 d 367, 396 (S.D.N.Y. 2006) (to meet its burden, Oxford is obliged to not only "name the witnesses who will be appearing [, but to also] describe their testimony so that the Court may measure the inconvenience caused by locating a lawsuit in a particular forum.")  (quotation and citation omitted).

records are not easily portable or that it would incur some other burden absent transfer.  Without

such a showing, this consideration has little effect on the Court's determination.[8]

<b>5.    <u>Judicial Economy Is Served By This Action Remaining In The<br>Western District of New York.</u></b>

Finally, Oxford contends that "transfer of venue to Maine would further judicial economy

and administrative efficiency since the Maine action has been pending since October 30, 2008."

Oxford's Memo of Law at p. 21.  What Oxford fails to acknowledge, however, is that the Maine

Action is stayed pending this Court's determination of this motion.  McGuirk Aff. at Exh. C.

The Maine Action is not progressing.  Even if the Maine Action were not stayed, it is unlikely

that it would progress with any due speed given that counsel for Oxford in the Maine Action has

indicated that he intends to imminently withdraw from the case and new counsel has only

recently appeared.  *See Id.*  Thus, judicial economy is well-served by allowing this case to

remain in this Court where the parties are set to begin discovery, which is the locus of operative

facts and where dispositive motion deadlines have been set.  *See, e.g., Capitol Records, Inc. v.*

*Optical Recording Corp.*, 810 F. Supp. 1350, 1355 (S.D.N.Y. 1992) (Denying a motion to

transfer when, among other factors, the second-filed action had proceeded further than the first-

action because the Court overseeing the second-filed action had permitted the parties to

commence discovery and had set a trial date.)[9]

---

[8]  Moreover, all of Leasing's records are located in this District, thus transferring the case to Maine would simply shift the burden from Oxford to Leasing.

[9]  Indeed, maintaining this lawsuit in this District would facilitate an inspection of the Aircraft in the event the parties' or the jury's desire to view the pressure vessel damage and repair.

**C.**    **Because the Maine Action Is An Improper Anticipatory Suit and Because the Balance of Conveniences Weigh In Favor of Maintaining This Action, The Court Should Decline To Follow The First-Filed Rule**

This Court should further reject Oxford's alternative suggestion that this Court should defer to the action pending in the District of Maine because it is the "first filed action."  *See*, *e.g.*, Oxford's Memo of Law at p. 10.  Under the so-called "first-filed" rule, "where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action. . . unless there are special circumstances which justify giving priority to the second action."  *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991).  "The first-filed rule is not to be applied mechanically, however, but is intended to aid judicial administration by acting as a presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action."  *Hanson PLC v. Metro-Goldwyn-Mayer, Inc.*, 932 F. Supp. 104, 106 (S.D.N.Y. 1996) (finding that the first-filed declaratory judgment action was "filed preemptively and should not be given the benefit of the first-filed rule") (internal citations and quotations omitted); *see also Crossman Corp. v. Heckler & Koch, Inc.*, 08-cv-6034 (CJS), 2008 U.S. Dist. LEXIS 73621, *12 (W.D.N.Y. Sept. 17, 2008) (allowing second-filed action to proceed because first-filed action sought an "improper declaratory judgment").

Thus, the first-filed rule should not be applied where, as here, there are "special circumstances" that justify deviating from the rule, such as when the first-filed suit is an "anticipatory filing", nor will it be applied if the balance of conveniences weighs in favor of maintaining the second-filed lawsuit.  *See e.g. Ontel Prods, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995) (noting "one exception [to the first-filed rule] exists where the first-filed suit constitutes an 'improper anticipatory filing'") (quotations omitted); *see also Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir. 1986) (noting that

the first-filed rule will not apply if there is a showing that the balance of conveniences weigh in favor of the second action) (citing *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177 (2d Cir. 1969)); *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1354-55 (S.D.N.Y. 1992) (factors weighing in favor of allowing second-filed action to proceed include: judicial economy, policy in favor of settlement, preventing race to courthouse triggered by demand letter, and fact that second action was filed only twenty days after first action).

Additionally, this action *is* the first-filed action involving the true parties in interest, thus rendering the first-filed rule inapplicable. Moreover, as demonstrated above, the balance of conveniences weigh in favor of maintaining this lawsuit in the Western District of New York. *See, e.g., Crossman Corp.*, 2008 U.S. Dist. LEXIS 73621 at *10 (noting that the factors the court considers under the "balance of convenience" exception are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)). Consequently, the first-filed rule should not be applied in this case even if it were applicable.

Further, special circumstances warrant deviation from application of the first-filed rule in this case if this Court were inclined to consider the rule's application. Oxford's filing of the Maine Action is nothing more than an "improper anticipatory filing," designed to preempt an anticipated action for damages filed by Leasing. *See, e.g. Crossman Corp.*, 2008 U.S. Dist. LEXIS 73621 at *12. Tellingly, the Complaint Oxford filed in the Maine Action seeks a declaratory judgment that CBI is entitled to "no damages." Moreover, Oxford filed the anticipatory suit just days after Thomas J. Mullin, Leasing's Vice President and Assistant Secretary, and CBI's General Counsel, wrote to Oxford regarding the pressure vessel damage in an attempt to informally resolve the lawsuit through settlement. Courts have often found exceptions to the first-filed rule when parties are engaged in settlement discussions:

> Where a party is prepared to pursue a lawsuit, but first desires to
> attempt settlement discussions, that party should not be deprived of
> the first-filed rules' benefit simply because its adversary used the
> resulting delay in filing to proceed with the mirror image of the
> anticipated suit.  Otherwise potential plaintiffs would be
> discouraged from first attempting to resolve their claims without
> resorting to litigation.

*Ontel Prods*, 899 F. Supp. at 1150; *see also Columbia Pictures Industries, Inc. v. Schneider,* 435

F. Supp. 742, 747 (S.D.N.Y. 1977), *aff'd* 573 F.2d 1288 (2d Cir. 1978) ("Potential plaintiffs

should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to

filing lawsuits without fear that the defendant will be permitted to take advantage of the

opportunity to institute litigation in a district of its own choosing" before the plaintiff files a

complaint).  Allowing Oxford to proceed with the Maine Action would discourage potential

plaintiffs, such as Leasing, from taking steps to informally resolve a dispute before filing suit.

*See*, *e.g. Hanson PLC*, 932 F. Supp. at 107.  "Indeed, public policy favors settlement and

potential litigants must be encouraged to seek to avoid litigation rather than to adopt a 'sue first,

talk later' philosophy."  *Id.* (internal citation omitted); *see also Columbia Pictures Industries,*

*Inc. v. Schneider,* 435 F. Supp. 742 (S.D.N.Y. 1977), *aff'd* 573 F.2d 1288 (2d Cir. 1978) (staying

first-filed action in favor of second-filed lawsuit for a variety of reasons, including good faith

attempts at settlement, judicial economy, the minimal difference in time between the filing of the

two complaints, and the fact that litigation had not proceeded in either district); *Crossman Corp.*,

2008 U.S. Dist. LEXIS 73621 at *12-13 (transferring action to district where second-filed action

was filed because the first-filed action was a "improper declaratory judgment" filed in response

to cease-and-desist letter).

   Finally, the first-filed rule plainly does not apply, where as here, the parties are not the

same in the two actions.  *See*, *e.g. Citigroup*, 97 F. Supp. 2d at 555 (noting that the first-filed

rule applies where there are two proceedings involving the "same parties"); *see also Bronx*

*Legal Servs.,* 2000 U.S. Dist. LEXIS 10952 at *14 (declining to apply the first-to-file rule

because the "parties are different").  As discussed, the Maine Action was filed against Leasing's

parent, CBI, who does not own the Aircraft and who is not a party to any agreement with

Oxford.

## IV.    <u>CONCLUSION</u>

This Court should deny Oxford's Motion to Transfer Action and For Consolidation,

because Oxford has failed to make a "clear and convincing" showing that the balance of

convenience weighs in favor of transferring this case to the District of Maine.

Respectfully submitted,

Dated:  May 21, 2009

By: <u>/s/ Richard A. McGuirk</u>
Richard A. McGuirk  (Bar # RM8033)
NIXON PEABODY LLP
Nixon Peabody, LLP
1100 Clinton Square
Rochester, New York 14604-1792
Telephone: (585) 263-1000
rmcguirk@nixonpeabody.com
*Attorneys for Plaintiff Constellation*
*Leasing, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the **CONSTELLATION LEASING, LLC'S**

**MEMORANDUM IN OPPOSITION TO OXFORD AVIATION, INC.'S MOTION TO**

**TRANSFER ACTION AND FOR CONSOLIDATION, AFFIDAVIT OF PAUL E.**

**MIDDLEBROOK and AFFIRMATION OF RICHARD A. MCGUIRK** were served upon

the attorney of record for Oxford Aviation, Inc., Gavin G. McCarthy, through the court's ECF

system on May 21, 2009.


                                        /s/ Richard A. McGuirk